UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

S<small>EAN</small> A<small>DAM</small> R<small>OGERS</small>,

      Plaintiff,

v.

D. M<small>AC</small>L<small>AREN</small> et al.,

      Defendants.

_____/

Case No. 1:20-cv-263

Honorable Janet T. Neff

## ORDER REGARDING SEVERANCE
## AND AMENDMENT OF PLAINTIFF'S COMPLAINT

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan; the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan; and the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.

    Plaintiff sues KCF Warden D. MacLaren, KCF Deputy Warden J. Harwood, KCF Deputy Warden/Administrative Assistant D. Mastew, KCF Resident Unit Manager D. Mansfield, KCF Assistant Resident Unit Manager L. Myers, KCF Hearing Investigator Unknown Vansloten, KCF Grievance Coordinator C. Anderson, MDOC Assistant Deputy Director L. Rapelje,[1] RGC

---

[1] Defendant Rapelje appears to have been formerly employed at KCF. He is considered a KCF Defendant for purposes of this opinion.

Warden J. Bush, RGC Resident Unit Manager J. Pieron, RGC Grievance Coordinator M. Trouten, ECF Warden T. Mackie, ECF Deputy Warden T. Ball, ECF Deputy Warden R. Sharp, ECF Resident Unit Manager J. Thomas, ECF Resident Unit Manager K. Smiley, ECF Prison Counselor K. Johnson, ECF Prison Counselor Unknown Wavier, ECF Quarter Master J. Hensley, ECF Officer Unknown Sherman, ECF Healthcare Registered Nurse Unknown Broyles, ECF Officer Unknown Roy, ECF Officer Unknown Del-Tour, ECF Officer Unknown Chesney, ECF Officer Unknown Boerema, ECF Officer Unknown Snyder, ECF Lieutenant Unknown Boerema,[2] and ECF Grievance Coordinator T. Bassett.

Plaintiff's fifty-three-page complaint consists of muddled allegations and an unclear chronology of events. Plaintiff has joined 28 Defendants from three different prisons in this action connecting a series of discrete events during the span from September 10, 2016 to October 5, 2017.

### I.   KCF Defendants

Plaintiff alleges that while confined at the Kinross Correctional Facility (KCF), he was an unwilling participant in an 'inciting to riot' incident on September 10, 2016, after he was threatened with bodily harm by other prisoners. Plaintiff claims that Housing Unit Officer Fountain told him to go outside during the incident because of safety concerns. On September 13, 2016, he was handcuffed and taken to the KCF gym, where he sat in handcuffs for several hours after Defendant Myers wrote a class I misconduct against him. While handcuffed, Plaintiff saw and spoke to Defendants MacLaren, Harwood, Mastew, Mansfield, Myers, and Rapelje, who all responded that it was Plaintiff's problem and that he should not have gone outside on the day of

---

[2] Defendants Correctional Officer Boerema and Lieutenant Boerema do not appear to be one and the same person. Plaintiff expressly names two Defendants in the caption of his complaint and in the list of Defendants, and he makes at least one allegation against each Defendant in the body of the complaint.

the riot. After being held in the gym, Plaintiff was transferred to the Charles E. Egeler Reception and Guidance Center (RGC). Plaintiff asserts that Officer Fountain was never interviewed by Defendant Vansloten, but Plaintiff had witnesses who overheard Fountain tell Plaintiff to go outside. Despite Plaintiff's witnesses, he was found guilty of inciting a riot. Plaintiff claims that Defendant Anderson refused to accept a grievance on Defendant Vansloten.

## II. RGC Defendants

Plaintiff claims that while he was confined at the Charles Egeler Reception & Guidance Center (RGC), Defendants Bush and Pieron were responsible for denying him his legal property and exposing him to black mold in the showers. Defendant Trouten refused to respond to Plaintiff's grievances while he was confined at RCG.

## III. ECF claims

At some point, Plaintiff was transferred to ECF, although the exact date of the transfer is unclear. On October 21, 2016, Defendants Mackie, Sharp, and Ball denied Plaintiff his seven-day sanction break, which would have allowed him to have yard time. On October 24, 2016, Plaintiff filed a step I grievance, but received no relief. On October 31, 2016, Defendant Hensley denied Plaintiff state clothing for the winter months, including tee shirts, a thermal top and bottoms, undershorts, and oxford shoes, because these items had been left at KCF. Plaintiff filed a step I grievance on Defendant Bassett for refusing to process Plaintiff's October 24, 2016 grievance. On December 1, 2016, Defendant Hensley claimed that he brought Plaintiff's clothing while Plaintiff was in the yard.

On November 21, 2016, while at ECF, Defendant Johnson refused to mail a grievance Plaintiff was attempting to file regarding events at KCF because Plaintiff agreed to be a witness for another prisoner. On the same date, Officer Brown asked Defendant Johnson why she

3

did not take Plaintiff's grievance when he asked. Defendant Johnson just walked away. On November 22, 2016, Plaintiff again asked Defendant Johnson to get him a notary and send out his legal mail, but Defendant Johnson refused, telling Plaintiff to "[b]e another witness for someone else." (Comp., ECF No. 1 at PageID.22.)

On December 10, 2016, Defendant Sherman gave Plaintiff a tray that had a toxic cleaning solution mixed in with the noodles and gravy. Plaintiff began to eat the noodles and noticed the chemical taste. Plaintiff then asked other inmates on the unit if their food tasted of chemicals, but they said that it did not. When Defendant Sherman came to collect the trays, he smiled and said, "How did you like your meal? It was made specially for you." (*Id.*, PageID.24.) Defendant Sherman refused to get the shift commander of health care staff upon Plaintiff's request, telling Plaintiff that his "grievance writing ass" was at ECF, not KCF. (*Id.*, PageID.25.) Later that day, Plaintiff stopped Defendant Broyles during health care rounds and told him that he had been poisoned, was having stomach cramps, diarrhea, and burning in his mouth and throat. Defendant Broyles refused to help Plaintiff, telling him that Defendant Sherman had told him not to give Plaintiff any medical care. Plaintiff then began to refuse his food trays, fearing that he would be poisoned again. As a result, Plaintiff was sent to an observation cell for six days. On December 20, 2016, Plaintiff was sent back to his unit, where prisoner Stephen Jones told him that the poison had been placed in his food by Defendant Sherman. When Plaintiff returned to his cell, he observed feces all over his toilet. Defendant Sherman refused to give Plaintiff cleaning supplies and told Plaintiff to wait until cleaning day, which was over 36 hours away.

On December 30, 2016, Defendant Lieutenant Boerema responded to Plaintiff's grievance against Defendant Johnson by saying that Defendant Johnson no longer worked at ECF and could not be reached for an interview. Plaintiff also states that Defendant Boerema

4

misconstrued the allegations in Plaintiff's grievance. Plaintiff filed step II and III grievance appeals, both of which were denied.

On January 12, 2017, Defendant Sherman tried to poison Plaintiff again. In addition, Defendants Sherman, Del-Tour, and Johnson conspired to retaliate against Plaintiff for filing a grievance. Defendant Del-Tour wrote a misconduct ticket on Plaintiff and another prisoner for violating posted rules. Defendant Sherman reviewed Plaintiff on the ticket on the same date. On January 18, 2017, Defendant Johnson held a hearing on the misconducts. Defendant Johnson dismissed the charge against the other prisoner because the ticket listed the wrong charge, but found Plaintiff guilty, despite the fact that Plaintiff's ticket listed the same charge.

On March 1, 2017, Plaintiff was coming out of the shower at ECF and asked Defendant Roy for a bar of soap and some toothpaste. Defendant Roy denied Plaintiff's request. Plaintiff told him that he was going to file a grievance, but Defendant Roy refused to give Plaintiff a step I grievance form. Later that day, Defendant Roy told Plaintiff that he would see if Plaintiff still wanted to file a grievance after Defendant Roy was done with him, and that Plaintiff would see how things were done at ECF. Later that day, Defendant Roy denied Plaintiff cell clean-up. When Plaintiff said he wanted cell clean-up, Defendant Roy asked if he was still going to file a grievance. When Plaintiff stated that he was, Defendant Roy said "Well, there is your answer." (*Id.*, PageID.29.) Defendant Roy also refused to give Plaintiff his dinner tray.

On July 12, 2017, Plaintiff was released to the general population in security level 4 at ECF. Plaintiff states that he was placed in level 4, which is a dangerous level, in order to punish him for trying to prove that he was an unwilling participant in the inciting to riot incident on September 10, 2016, and to deter Plaintiff from filing more grievances. On July 13, 2017, prisoner Joseph Goraj told Plaintiff that Defendants Sharp and Thomas had Plaintiff placed in level 4 in

order to get back at Plaintiff for filing grievances against staff at ECF.  Plaintiff had previously asked Defendants Sharp and Thomas if he could be placed in level 2 and was told that was not possible with his "grievance writing ass."  (*Id.*, PageID.30.)  Plaintiff states that Defendants Mackie, Ball, Smiley, and Johnson also approved this move.

On July 13, 2017, Plaintiff was stopped by Defendant Chesney, who asked if Plaintiff was the prisoner from KCF.  Plaintiff said that he was, but that he did not want any trouble.  Defendant Chesney told Plaintiff, "If I want to give you trouble[,] I will and much more."  (*Id.*, PageID.31.)  Plaintiff told Defendant Chesney that he was going to file a grievance on him, and Defendant Chesney responded, "We will see about that grievance being filed."  (*Id.*)  Three hours later, Defendant Chesney filed a false disciplinary charge on Plaintiff for loitering.

On July 24, 2016, Plaintiff asked Defendant Wavier for a new mattress pad because the pad Plaintiff had was missing padding in the middle.  Defendant Wavier refused.  Plaintiff stated that he was going to file a grievance, but Defendant Wavier refused to give Plaintiff a step I grievance form.  Plaintiff asked another housing officer, but Defendant Wavier told the officer not to give Plaintiff a form.  Defendant Wavier then took Plaintiff's identification card and ordered Plaintiff to lock down, taking away the rest of Plaintiff's yard time.

On October 5, 2017, Plaintiff asked Defendant Snyder for a bar of state soap.  Defendant Snyder refused and Plaintiff told him that he was going to file a grievance.  Defendant Snyder said, "Go right ahead, it will hurt you more."  (*Id.*, PageID.33.)  Defendant Boerema overheard Plaintiff and told him to file his grievance, but in the meantime to go to his cell because he was not going to get a shower or soap.

### IV. Misjoinder and severance

Rule 21 of the Federal Rules of Civil Procedure provides that, on motion by a party or on its own motion, the Court may at any time drop or add parties or sever a claim on grounds of misjoinder.  FED. R. CIV. P. 21.  The Court, therefore, reviews Plaintiff's complaint for proper joinder.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also*

*Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Plaintiff's complaint first addresses events which occurred at KCF and relate to Defendants MacLaren, Harwood, Mastew, Mansfield, Myers, Vansloten, Anderson, and Rapelje. The alleged misconduct which relates to these Defendants is Plaintiff's supposedly false misconduct for inciting a riot, which resulted in his transfer from KCF. Although Plaintiff makes a bare assertion that every subsequent action after he was transferred from KCF was related to a desire to prevent Plaintiff from proving his innocence, he fails to allege any facts showing the existence of such a connection. As a result, no claim against any of the Defendants at RGC or ECF is transactionally related to these claims.

Furthermore, Plaintiff's claims asserting misconduct by RGC Defendants Bush, Pieron, and Trouten appear to be completely unrelated to his claims of misconduct by ECF Defendants Mackie, Ball, Sharp, Thomas, Smiley, Johnson, Wavier, Hensley, Sherman, Broyles, Roy, Del-Tour, Chesney, Officer Boerema, Lt. Boerema, Snyder, and Bassett. Because the claims related to the Defendants at one correctional facility are not transactionally related to the claims at the other facilities, the presentation of all of these claims in the body of a single complaint only serves to confuse the issues.

Therefore, the Court directs the Clerk to sever Plaintiff's claims into three suits. Plaintiff may proceed under the existing case number to pursue his claims against the KCF Defendants (Defendants MacLaren, Harwood, Mastew, Mansfield, Myers, Vansloten, Anderson, and Rapelje). The Clerk shall open new cases, one for Plaintiff's claims against the RGC Defendants (Defendants Bush, Pieron, and Trouten) and one for his claims against the ECF Defendants (Defendants Mackie, Ball, Sharp, Thomas, Smiley, Johnson, Wavier, Hensley, Sherman, Broyles, Roy, Del-Tour, Chesney, Officer Boerema, Lt. Boerema, Snyder, and Bassett). The pleadings filed in the instant case to date shall appear in the docket of each case.

Moreover, to ensure that each case goes forward with only the claims that relate to the pertinent Defendants, Plaintiff shall file an amended complaint in each case containing only the allegations relevant to the claims against the Defendants at that correctional facility. All civil rights complaints brought by prisoners must be submitted on the form provided by this Court. *See* W.D. Mich. LCivR 5.6(a). Plaintiff failed to file his initial complaint on the requisite form. If Plaintiff wishes to proceed with his claims, then he must carefully fill out the form and submit it to the Court in each of the three cases.

The Court directs the Clerk to send to Plaintiff three copies of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody. Plaintiff shall submit an amended complaint in each case by filing his complaint on the requisite form within twenty-eight (28) days from the date of entry of this Order. The amended complaint in each case will take the place of the original complaint, so it must include all of the Defendants that Plaintiff intends to sue in that case, and all of the claims that Plaintiff intends to raise. Plaintiff need not re-submit supporting exhibits filed with the original complaint. The front page of the amended complaint in each case, must list the appropriate case number. If Plaintiff fails to submit an amended complaint in proper form for each case within the time allowed, the Court may dismiss that case without prejudice.

Upon compliance with this Order, the Court shall review each complaint under 28 U.S.C. §§ 1915(e), 1915A and/or 42 U.S.C. § 1997e(c)(1), as appropriate. After the Court reviews each case, the Court will determine whether dismissal or service of process is appropriate and will fashion an order accordingly. Should Plaintiff's cases be dismissed, voluntarily or by the Court, Plaintiff shall remain responsible for the filing fee. *McGore*, 114 F.3d at 607. Any pleadings

11

herein served by the United States Marshal shall be at the expense of the United States government. All costs shall be reimbursed to the United States should Plaintiff prevail.

Once service of process has been ordered, Plaintiff shall serve upon Defendants, or if an appearance has been entered by an attorney, upon the attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date a true and correct copy of any document was mailed to Defendants or the attorney. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Accordingly,

**IT IS ORDERED** that Plaintiff's claims against the Defendants at KCF, RGC, and ECF shall be severed into three separate actions. Plaintiff's claims against the KCF Defendants shall proceed under this case number. The Clerk is directed to open two new cases—one for Plaintiff's claims against the RGC Defendants (Defendants Bush, Pieron, and Trouten) and one for Plaintiff's claims against the ECF Defendants (Defendants Mackie, Ball, Sharp, Thomas, Smiley, Johnson, Wavier, Hensley, Sherman, Broyles, Roy, Del-Tour, Chesney, Officer Boerema, Lt. Boerema, Snyder, and Bassett). The three cases are related within the meaning of Western District of Michigan Local Civil Rule 3.3.1(d).

**IT IS FURTHER ORDERED** that Plaintiff shall submit an amended complaint in each case by filing his complaints on the requisite form within twenty-eight (28) days from the date of entry of this order. The amended complaint in each case will take the place of the original complaint, so it must include all of the Defendants that Plaintiff intends to sue and all of the claims that Plaintiff intends to raise. If Plaintiff fails to submit an amended complaint in proper form

within the time allowed in any of the three cases, the Court may dismiss the complaint in that case without prejudice. The Clerk is directed to send to Plaintiff three copies of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody.

Dated:   May 6, 2020                               /s/ Janet T. Neff
                                                   Janet T. Neff
                                                   United States District Judge